AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Mark Alan Brandjes<br><br>Defendant(s) | )<br>)<br>) Case No.: 6:24-mj- 1519<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 17, 2023__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Charles Johnsten, USPS
Printed name and title

Sworn to before me over video conference and signed by me pursuant to Fed.R.Crim. P. 4.1 and 4(d)

Date: 5/15/24

_____
Judge's signature

City and state: Orlando, FL

LESLIE HOFFMAN PRICE, U.S. Magistrate Judge
Printed name and title

**STATE OF FLORIDA**          CASE NO. 6:24-mj-1519
                                        1520
**COUNTY OF ORANGE**          <u>Filed Under Seal</u>   1521
                                        1522

## MASTER AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND APPLICATIONS FOR SEIZURE WARRANTS

I, Charles Johnsten, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this master affidavit in support of a criminal complaint and arrest warrant for Mark Alan Brandjes ("BRANDJES") for committing Wire Fraud in violation of 18 U.S.C. § 1343. This affidavit is also being submitted in support of applications for civil and criminal seizure warrants for the following vehicles and bank account:

   a. 2023 Lincoln Navigator, VIN #5LMJJ3TGXPEL06365, titled to BRANDJES;

   b. 2023 Mini Cooper VIN #WMW43DL00P3R19451, titled to BRANDJES; and

   c. Contents of Space Coast Credit Union account #199000379115 held in the name of BRANDJES and Tabitha Crowley.

2. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since December 2016. I am currently assigned to the Orlando, Florida, Domicile. Prior to December 2016, I was a Special Agent with the United States Secret Service for nine years, assigned to the Orlando Field Office. Among my duties as a Postal Inspector, I investigate financial crimes,

including identity fraud, mail theft, mail fraud, bank fraud, wire fraud, and the use of counterfeit and fraudulent access devices, such as credit cards, debit cards, and gift cards. I also investigate robberies of USPS employees and burglaries of USPS property.

3. The investigation is being conducted jointly by the United States Postal Inspection Service and the Orlando Police Department. Information obtained as a result of the investigative efforts of each agency is being shared with agents from the other agencies and incorporated into this affidavit. The facts set forth in this affidavit are based on my own personal knowledge, the knowledge obtained from other law enforcement officers, a review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience and the training and experience of others.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of applications for the arrest and seizure warrants described herein, it does not set forth each and every fact that I or others have learned during the course of the investigation.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and warrants and does not set forth all my knowledge about this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related only in substance and in part and are not intended to be verbatim recitations. When a date is listed, I

mean that the event occurred "on or about" that date. When a time period is listed, I mean that the event occurred "in or around" that time period.

6. As set forth in this affidavit, there is probable cause to believe that the above-referenced vehicles were purchased, and the bank account was funded, with proceeds of violations of 18 U.S.C. § 1343 (Wire Fraud) and are, therefore, subject to civil forfeiture by the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), and criminal forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

7. The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1343 is found in 18 U.S.C. § 981(a)(1)(C), which provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. 18 U.S.C. § 981(a)(1)(C). A "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1). Specifically, 18 U.S.C. § 1961(1) includes violations of 18 U.S.C. § 1343. The Court's authority to order criminal forfeiture of assets purchased or funded with proceeds of a specified unlawful activity is authorized by 28 U.S.C. § 2461(c), which authorizes the criminal forfeiture of any property that can be forfeited civilly using the procedures for the criminal forfeiture and disposition of property set forth in 21 U.S.C. § 853.

8.  The above-referenced vehicles and funds in the bank account are subject to civil seizure pursuant to 18 U.S.C. § 981(b) and criminal seizure pursuant to 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 981(b)(1).[1]

## PROBABLE CAUSE

9.  At times material to the information contained in this affidavit:

    a.  Regions Financial Corporation ("Regions Bank") was a financial institution headquartered in Birmingham, Alabama, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and the servers of which are located in Birmingham, Alabama.

    b.  Wells Fargo & Company ("Wells Fargo") was a multinational financial institution headquartered in San Francisco, California, the deposits of which were insured by the FDIC.

    c.  Space Coast Credit Union was a state-chartered credit union with headquarters in Melbourne, Florida, the deposits of which were insured by the National Credit Union Administration.

10.  On July 29, 2022, BRANDJES was hired as the new Chief Financial Officer (CFO) by start-up company "Corporation 1," which conducts business as "T.P." C.M. is the President of T.P., which is a venture capital fund with an office located in Orlando, Florida, and the company is currently building a restaurant in

---

[1] The United States requests seizure warrants to assure the availability of the vehicles and money for trial. Given that the vehicles are easily movable, the United States contends that a seizure warrant is the only means to assure that the vehicles will be available for trial. In addition, based upon my training and experience, I know that cash is readily transferable and easily hidden or concealed. Likewise, I know that financial institutions are not always able to implement restraining orders on bank accounts quickly enough to prevent the withdraw or transfer of funds on deposit; for instance, I know that there have been instances where restraining orders issued in the Middle District of Florida proved ineffective in preventing individuals from withdrawing funds believed to be fraud proceeds from restrained accounts. Therefore, seizure of funds is necessary in order to preserve the availability of the property for forfeiture.

Orlando. T.P. hired BRANDJES to oversee the financial aspects of the new business, which oversaw the construction of a restaurant and research and development in their protein laboratory. BRANDJES signed an employee contract with T.P. and was to be paid $180,000 yearly as compensation.

11. C.M. provided agents with the resume that BRANDJES provided to the company, which stated that BRANDJES had a Ph.D. from the Massachusetts Institute of Technology ("MIT") in Engineering and System Design Management. Investigators contacted MIT and inquired about BRANDJES' education and degree. MIT had no record of BRANDJES ever attending the school or obtaining any degree from MIT.

12. On or about July 29, 2021, C.M. opened a business account ending in ****0518 at Regions Bank ("T.P.'s Regions Account"), and BRANDJES was listed as the account custodian. The signature card on the account listed Corporation 1 with a business address in Orlando, Florida. C.M. was listed as the Authorized Signer on the account. This was the only financial account which BRANDJES was authorized to use for Corporation 1 / T.P.

13. On or about May 23, 2023, BRANDJES opened an additional business account under the name Corporation 1, doing business as "T.P.," ending in ****4094 at Wells Fargo Bank ("T.P.'s Wells Fargo Account"). T.P.'s Wells Fargo account records listed BRANDJES as the CFO of the business and "Owner with Control" as the relationship to the business. During the time that this account was used by BRANDJES to conduct T.P. business, neither C.M. nor any other employee

of T.P. was aware that BRANDJES opened this account. Moreover, no other employee at T.P., including C.M., had access to this account.

14. In or about August 2023, an independent bookkeeper, B.B., noticed discrepancies in T.P.'s Regions Account. Accordingly, on August 25, 2023, B.B. sent an email to BRANDJES, asking for help with a large number of necessary reconciliations needed to correct the account records.

15. Thereafter, on or about September 2023, J.V., a T.P. employee, sent an email to BRANDJES questioning several unusual transactions that were located in the raw bank data that J.V. had downloaded for T.P.'s Regions Account, but which appeared to be missing from bank statements provided by BRANDJES. Specifically, J.V. was concerned about a "payment/transfer/wire of $250,000 on 5/17/2023 in the downloaded data but NOT on the bank statement" provided by BRANDJES. J.V. also stated that a "bank statement . . . NOT in the downloaded data is a $5,000 deposit on 6/22/2023," and inquired about a "card [sic] payment on 6/12/2023 . . . for $1,500 on the bank statement, but NOT in the downloaded data." J.V. ended the email to BRANDJES stating the following: "This has never happened before . . . I don't have a clue why these problems exist. Any insights?"

16. After these discrepancies were discovered, representatives of T.P. began questioning BRANDJES. Shortly thereafter, BRANDJES stopped communicating with anyone from T.P. Because of the initial discrepancies in T.P.'s Regions Account, C.M. and its bookkeeper began to investigate BRANDJES and began reviewing the financials records. They ultimately discovered that money had been

stolen from T.P.'s Regions Account. On or about February 26, 2024, as a result of C.M.'s and its bookkeeper's review, BRANDJES was fired by T.P.

17. After BRANDJES left T.P., the company discovered that he took a company computer, which stored many of the company documents, including financial and Human Resources documents. C.M. continued reviewing financial records and was also able to review BRANDJES' T.P. company email account. While reviewing BRANDJES' T.P. emails, C.M. discovered several statements for T.P.'s Wells Fargo Account.

18. C.M. also discovered Malarkey Sparkle invoices and a GM Financial Business Credit Application under Corporation 1 in BRANDJES' name, a State Farm document for a 2023 Lincoln Navigator (VIN *6365), and a note titled "mini update" dated May 19, 2023, with the names Mark BRANDJES and T.C. on the top. This "mini update" had what appears to be several "to-do" items listed with dates. Item number 3 on the list says, "wire has been sent for $46,300.02," which is the exact amount wired by BRANDJES to a Mini Cooper dealership, as discussed in paragraph 19, below. Item number 7 says, "mini pick up will be Friday may 26th – sarah has been notified."

19. C.M. also located several Space Coast Credit Union bank statements with the name T.C. and Mark BRANDJES on the top, and account number ****9115 ("BRANDJES' SCCU Account"). The Space Coast Credit Union statements showed a Domestic Wire Transfer Deposit on May 17, 2023, for $250,000, and a Domestic Wire Withdrawal on May 19, 2023, for $46,300.02.

7

Finally, there was a Regions Bank "Customer Copy" of a Domestic Wire Transfer Request/Authorization dated May 17, 2023, for a $250,000 interstate wire transfer from T.P.'s Regions Account to BRANDJES' SCCU Account. The Beneficiary was listed as BRANDJES, and BRANDJES' home address was listed on the transfer instructions. Under Originator/Payment By, BRANDJES' Florida Driver License number and date of birth were listed. On March 11, 2024, C.M. filed a complaint with the Orlando Police Department.

20. As a result of the investigation, it was discovered that many of the financial documents BRANDJES gave to T.P.'s bookkeeper were altered, hiding various transactions. For example, investigators discovered that a $250,000 interstate wire transfer was made on May 17, 2023, from T.P.'s Regions Account to BRANDJES' SCCU Account – the personal account of BRANDJES and T.C., his spouse. C.M. was able to locate a copy of a Regions Bank statement that BRANDJES provided the bookkeeper that was edited to remove this $250,000 interstate wire transfer to BRANDJES' personal Space Coast Credit Union account.

21. Investigators also learned that between June 22, 2023 – December 27, 2023, an additional 16 unauthorized wire transfers totaling $69,000 were made from T.P.'s Wells Fargo Account to BRANDJES' SCCU Account.

22. Investigators also learned that there were 26 invoices from a company called Malarkey Sparkle, which was billing T.P. for miscellaneous items like "social media marketing" and "professional operational services." Investigation revealed that Malarkey Sparkle is a business owned by BRANDJES and his spouse, T.C.,

with a storefront in the Oviedo Mall. Malarkey Sparkle sells various items (e.g., t-shirts, coffee mugs, earrings). It was eventually discovered that between September 8, 2022 – June 12, 2023, there were 32 unauthorized debits made from Malarkey Sparkle's website, https://malarkeysparkle.com/, which debited T.P.'s Regions account for a total of $46,475 in unauthorized transactions. Of the 32 unauthorized debits, 26 of them matched the fraudulent bills that BRANDJES provided to T.P. bookkeepers.

## PURCHASE OF VEHICLES AND FUNDING OF ACCOUNTS WITH FRAUD PROCEEDS

### I. Purchase of Mini Cooper with Fraud Proceeds

23. As previously stated, on May 17, 2023, BRANDJES sent an unauthorized $250,000 interstate wire transfer from T.P.'s Regions Bank Account to BRANDJES' SCCU Account (the personal account BRANDJES shares with his spouse). Prior to the May 17, 2023, interstate wire transfer, BRANDJES' SCCU Account had a balance of $-942.06.

24. On or about May 19, 2023 (two days after the $250,000 wire transfer), BRANDJES wired $46,300 from his SCCU Account to a Mini Cooper dealership for the purchase of a black 2023 Mini Cooper (VIN #WMW43DL00P3R19451). According to records from Florida's Driver and Vehicle Information Database ("DAVID"), the vehicle is registered to BRANDJES.

25. On May 8, 2024, law enforcement officers observed the black 2023 Mini Cooper in the driveway of BRANDJES' residence located at XXX Orense Way, Oviedo, Florida, 32765.

## II. Purchase of Lincoln Navigator with Fraud Proceeds

26. On or about June 15, 2023, BRANDJES wired $129,290.27 from T.P.'s Wells Fargo Account to a Lincoln dealership to purchase a 2023 black Lincoln Navigator Black Label (VIN #5LMJJ3TGXPEL06365). According to records from DAVID, the vehicle is registered to BRANDJES.

27. As stated above, while this account was used by BRANDJES to conduct T.P. business, BRANDJES was the only person who had access to this account, and no one from T.P. knew it existed. More importantly, no one from T.P. authorized BRANDJES to use T.P. funds to purchase a vehicle.[2]

28. On May 8, 2024, law enforcement officers observed the 2023 black Lincoln Navigator Black Label in the driveway of BRANDJES' residence located at XXX Orense Way, Oviedo, Florida, 32765.

## III. BRANDJES' SCCU Account

29. On or about September 25 and 26, 2023, BRANDJES wired $100,000 and $35,750.97, respectively, from T.P.'s Wells Fargo Account to a Lincoln dealership to purchase a second 2023 black Lincoln Navigator Black Label (VIN

---

[2] While T.P. did pay BRANDJES a salary, those funds were deposited into BRANDJES' SCCU Account, and BRANDJES did not transfer money from his SCCU Account into T.P.'s Wells Fargo Account.

#5LMJJ3TG9PEL12979). The purchase of this vehicle was not authorized by anyone at T.P.

30. On or about April 17, 2024, BRANDJES sold this vehicle for $80,000.00. According to information obtained from SCCU, on April 17, 2024, the proceeds obtained from the sale of this vehicle were deposited into BRANDJES' SCCU Account via check. Prior to that deposit, the account balance was approximately $10,814.61. The only other deposits into the account were on May 1, 2024 ($437.75) and on May 2, 2024 ($31.34). These deposits do not appear to be related to the fraud.

31. As of May 13, 2024, the account balance is $44,311.14. Using the Lowest Intermediate Balance tracing method (LIBR),[3] any "clean" money that was in the account has been withdrawn, and the remaining funds in the account are traceable to wire fraud proceeds.

## CONCLUSION

32. Based on my training, experience, and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe BRANDJES knowingly devised a scheme to defraud T.P. by using fraudulent pretenses and representations about material facts, that BRANDJES intended to defraud T.P., that BRANDJES made an interstate wire transaction on May 17, 2023, to help carry out his scheme to defraud T.P., in violation of 18 U.S.C. § 1343, and that the funds in

---

[3] Under the LIBR tracing method, when commingled funds are in an account, legitimate funds are withdrawn first, leaving the criminal proceeds in the account.

11

the subject account and subject vehicles were funded and/or purchased with proceeds traceable to wire fraud offenses.

_____
Charles Johnsten
United States Postal Inspector

Affidavit submitted by email and attested
to me as true and accurate by telephone or
videoconference consistent with
Fed. R. Crim. P. 4.1 and 41(d)(3) this
___15th___ day of May 2024.

_____
HON. LESLIE HOFFMAN PRICE
United States Magistrate Judge